10-00-6-8. People, Mercy, Care, and Welfare. Councils. Good morning. Good morning, Your Honors. Assistant State's Attorney Tabara Richardson for the People. Thank you. And Christopher Kopasz from the State Appellate Defender's Office for Daryl Surles. Okay. Um, what time do you need, Council? Um, 15 minutes should be adequate. Okay. And I'd like to reserve a couple minutes for rebuttal. Fine. Council? Your Honor, 10 minutes should be sufficient. Okay, thank you very much. I just ask, for my sake, would you keep your voices up? Thank you. I'm sorry, Council. Your last name? Kopasz. Okay. Thank you. And we also ask you to get to your most important points first. Sure. Okay. May it please the Court, my name is Christopher Kopasz again. I represent Daryl Surles, the defendant. In our brief, we raised four issues. Today, I'd like to focus most of my attention on the first issue. That's the Fourth Amendment issue. And if we have time, I can touch very briefly on the second issue, which is the Second Amendment issue. With respect to the Fourth Amendment argument, we made two alternative arguments. First, that the police conducted an unlawful arrest, converting a routine traffic stop into arrest when they handcuffed Mr. Surles, who was a mere passenger in that car. And the alternative, if this Court rules that there was no arrest, we contend that there was an unlawful pat-down where the police lacked reasonable suspicion that he was armed and dangerous at the time. With respect to the arrest, Officer McGrew immediately handcuffed Daryl Surles upon his exiting from the car. Again, he was only a passenger in the car that was stopped for routine traffic infraction. The officer said that it was for safety measures. But there are two important facts here that sort of refute that need to handcuff Surles. The first is that when the officer handcuffed Surles, there were six officers on the scene for only three occupants in the car. So there were two officers for every one person stopped, and the officers greatly outnumbered the occupants. And second, and maybe even more importantly, the officer himself admitted that there was nothing particularly threatening or suspicious about Surles at the time that he put him in handcuffs. And case law has said that in order to use handcuffs in a tarry stop or a traffic stop, there has to be some sort of special circumstance in order to make that additional intrusion reasonable. And none of those circumstances is present here. As I said, for safety measures it wasn't necessary because officers greatly outnumbered the people stopped. Also, this was just a routine traffic stop. Failing to stop at a stop sign, the driver didn't have a license. This was not an officer investigating a violent crime. It was not investigating a shooting, a robbery. The officer had no reason to believe that anyone would be violent. There was no reason for the officer to think that anyone would be a flight risk. Everyone in the car seemed to be perfectly cooperative. And in fact, Surles was handcuffed as soon as he exited the car. So the officer sort of jumped the gun there by handcuffing him immediately. It's also important to address the officer's concerns about the area in which this traffic stop occurred. The officer pointed to the fact that there had been a number of shootings in the area and that sort of elevated his suspicion. But that's generally a high crime area that doesn't necessarily give you a right to handcuff someone during a Terry stop. It's just very broad. There were shootings in the area over the past month. None of those shootings was connected to anyone in the car, to Surles, to the driver. The officers didn't have any reason to believe they were involved in gang activity. Simply nothing at all connecting them to those shootings. This was a traffic stop that was very routine. You have no argument with the traffic stop? With the stop itself, no. Go ahead. So, in fact, Officer McGrew testified himself that with the shootings out there, he just wanted to play everyone safe. But that's not the sort of objective or reasonable mark of danger that's required to use handcuffs during a traffic stop. If we look at a case like Arnold or a case like Johnson from this court. But the officers had some rights to protect themselves. Certainly. If they stop a car, no license is displayed. I suppose he didn't have one. The license is displayed. He says, get out of the car. They want to do a search of the car. Get out of the car. It's a high crime area with a lot of shootings going on, at least some shootings going around. What would the officers do? Just say, oh, stand over there without making sure they didn't have a gun? Yes. Terry and his progeny, it's very, very clear that there's no generalized search for weapons just by the mere fact of someone being stopped. Same for handcuffing. There's no general right to handcuff during a Terry stop. Could they search him? Would you go along with that? Pat down? No. We argue that the pat down was improper as well. Why would a pat down be improper if they feared for their safety? Well, there has to be an objective or reasonable fear for their safety. Three people, no driver's license, they'll let traffic stop in a high shooting area. Correct. What would I do if I were out? Well, the case law says we have to have objective facts. And the mere fact of a high crime area isn't an objective fact to tie his belief that he needs to do this for safety measures to those particular people who were stopped. Okay, you said these three are not tied to the shootings. I suppose if they knew who was tied to the shootings, they'd be in jail. No, but I mean the officers were not investigating them pursuant to the shooting. They weren't suspects in the shooting. They didn't look like anyone remotely related to the shootings. They didn't look like gang members. There was nothing remotely connecting them to the shootings. They just happened to be passing through this area that the officer believed was a high crime area. Mr. Kopech, what did the officer say regarding the occupants of that car? He said that they were doing nothing suspicious, nothing threatening, nothing illegal. The officer said nothing about those people in the car themselves that would lead him to believe that he needed to use additional safety measures, be it handcuffing or going to a backup. Did any of the state's witnesses express an apprehension about the occupants of that car? No. The officers did not. Okay. There are concerns with this. There's a long time ago I was in law enforcement, and there was a saying, a cliche, whatever you want to call it, went around that said better be tried by twelve than be carried by six. Did you ever hear that? I have not. When we were in training, that's what we were told, you know, when in doubt, take it cautiously. Do you think these officers just were too cautious? Well, the officers, certainly officers have, you know, reason to take safety measures, and Terry and a lot of the other cases give them a whole lot of leeway to do that. They can order the passengers out of the car, all the passengers are detained during the time of the stop, but you have to have... My fear is that if we went your way a hundred percent, and in some other cases, you cited one yesterday, are we telling, are we sending out a message to the law enforcement community that says you can't get out. You have to respect their rights even more so. You just can't do anything unless you come up with almost probable causes. No, not at all. You just need reasonable suspicion that he's armed and dangerous, and that's been the law since 1967, and so that's nothing new that we're telling officers. In fact, to the contrary, if you uphold the officers... Okay, what happened here, chronologically? Was there a pat-down? What happened first? So the officers ordered the occupants out of the car, Officer McGrew takes Searles, handcuffs him, passes him to Officer Solano... Cuffed him before the pat-down? Correct. He was handcuffed before the pat-down. And you argue that the cuffing is an arrest? Yes. Something more than an articulable suspicion? Yes. Probable cause? Without probable cause. Sitting in the car? Right. Okay. And then he's handcuffed and immediately passed to the other officer who immediately conducts a pat-down. And again, the officer himself admits that he conducts the pat-down on basically everybody. We don't know if he's got a weapon or not. And that's exactly the wrong standard under Terry and 40 years of law, that you have to have a reasonable suspicion that this particular person who stopped is armed and dangerous. And if the officers could point to something, if you could point to some furtive movements, if you could point to some indicia of gang activity, if he looked like a suspect in a crime, those would be the type of things that would lead him to believe that he's armed and dangerous. Or the types of things that would allow him to handcuff during a very routine traffic stop. Did the officer talk about whether he was threatened at all or whether he felt fearful for his life? And did the officer give any indication of whether this was a routine procedure? The... By those officers. The officer said that he... What he said is, we want to play everyone safe, that he handcuffs girls for his safety. He said that this was not a routine traffic stop because of the shootings in the area. But the reason for the stop and everything that happened prior to the pat-down was very routine. It was blowing a stop sign, driver didn't have a license, everybody gets out of the car, the cops are going to do their inventory. That's all very routine type procedures that you would do for a traffic stop. If the officers were able to point to something, they would be able to justify the additional intrusions here. And the officer himself, again, said that he conducts pat-downs on everybody. We don't know if he's got a weapon or not. We don't know who these people are. And it's absolutely not the case. So the officer indicated that when they stop people in this particular area, that they always or usually conduct a pat-down? Yes, on basically everybody. And so that's the sort of subjective standard that is not permitted under Terry v. Ohio and all the other cases. Everybody in that high crime area? Apparently. He doesn't qualify. He says basically everybody. And so if this court has a reason to stop and three people are in there and there's no driver's license, does he have a right to search the car? He might have a right to search the car as a search incident to the driver's arrest. You know, this was pre-Gantt, which sort of changed the law on that. He might have the right to do an inventory of the car if the car is being towed. But even if the officer wanted to search the car, there were six officers on the scene here for three people. I'm sorry, I couldn't figure it out from my reading. Were all six there from the beginning? By the time the officers ordered everyone out of the car, all six were there. So I think there was the first car who initiated the stop. And then very shortly after, two additional cars, two officers each came in. So you had six officers on the scene who can conceivably control the scene and detain everyone without resorting to these very intrusive measures of handcuffs and pat-downs. And if you're upholding what the officers did here, you're sort of wiping away what's left of the Fourth Amendment law during traffic stops, saying that the officers can conduct pat-downs on everybody, can handcuff people without suspicion, and they're with very little restrictions on what they can do. Did anyone define a high crime area? No. The officer said that there were some shootings, a rash of shootings, I think, within the past month. But he didn't give, certainly, a geographical location. We don't know if this block, or this particular intersection where he was stopped was the high crime area, how far this extended. I'm sorry, didn't he say there were a lot of shootings in the area? Yes. Can you presume it's the area where the stop was? Right, but what does that area mean? Does that area mean the entire neighborhood? Does that area mean the entire block? I mean, perhaps, so we're allowing the police already have a lot of discretion and whatnot, and to allow them to say, you know, in this area, as a basis for handcuffs. There's no cross-examine on that issue? On the high crime area? There is a little bit. I mean, certainly, there's cross-examination on the fact that Searles was not, or anyone in this car, was not associated with or could be connected with any part of that crime. And that's what's most important, is that they were not related to that crime. And this Court has no other questions. I can reserve time for rebuttal. Okay, thank you, sir. May it please the Court, Counsel, I am Assistant State's Attorney Tabara Richardson, here on behalf of the people of the state of Illinois. The actions of the officers in this case did not offend the Fourth Amendment. First, this was a valid traffic stop where the car failed to stop at a stop sign. Next, when the driver could not produce a valid driver's license, the officers were required to take him in, and everyone had to get out of the car. The officers were aware that there were shootings going on every day in this area. There were guns recovered off of this exact street, Shields, where this car was stopped. There were three men in the car, and there was a gang war going on. So we are not talking about just a high-crime area. There were very particular facts of where this car was stopped, which provided Officer McGrew with objectively reasonable particular facts where he had to handcuff the defendant when he properly asked him out of the car. How could they justify handcuffing as opposed to a pat down? Your Honor, there was reasonable suspicion to believe that the handcuffs were necessary, whether it was a handcuffs or actually a pat down at this point, because first, this wasn't just a random stop, let me harass you. The car failed to stop at a stop sign. Then we have a driver who was driving without a license who is now being arrested, and everyone had to get out of the car. They couldn't allow the driver to continue driving without his license. And then the officers were all aware. There were only four officers at the scene. If we look at the record, page E43, there were four officers at the scene at this time, and the officers were aware that there were shootings going on, there were guns recovered off of this exact cross street where the car was stopped, and we have a gang war going on. So considering the particular facts of this particular stop, it was objectively reasonable for the use of handcuffs for officer's safety when the occupants of the car were ordered out of the car. We have a couple of things that's troubling me. Number one, Officer McGrew, did he testify that Searles, the guy who was driving, that Searles did nothing illegal and did not make him fear for his safety? Now the officer is saying he did nothing illegal and he did not make me fear for my safety. Is this what the officer said? Yes and no, Your Honor. The officer McGrew did state that the defendant had not done anything illegal and he stated that he didn't feel threatened. However, the standard is whether it was objectively reasonable. Therefore, I don't think Let's talk about objectively reasonable. Is there any indication that the officers knew or prior knowledge of any of the occupants of the car No, Your Honor. Is there any indication that any of the occupants of that car were associated with gangs? No, Your Honor. Was there any indication of the last time a gun had been recovered from this very same street where the traffic stop was effectuated? No, Your Honor. However, Officer Solano did testify that there were shootings every day. And when was the last date? Officer Solano said that there were shootings every day. When was the last date that he identified the shooting having occurred? The record does not indicate the last date. However, Officer McGrew testified that these shootings were occurring within the last week to a month and Officer Solano testified that these shootings were occurring every day. So is there any indication that a shooting had occurred on the day of the traffic stop? No, Your Honor. However, Officer Solano How do we reconcile in our search for an objective standard with the officer's testimony that we risk everybody? Well, Your Honor, what counsel failed to mention, and which is an important fact of this case No, I'm talking about his testimony. I'm talking about the officer's testimony. And correct me if I'm wrong. Officer Solano testified at one point that he did conduct pat-downs of everyone. But also on E41 he testified we don't just pat down anybody. And in this particular case, before Officer Solano ever touched the defendant, when the defendant faced Officer Solano, he observed a 2 to 3 inch bulge protruding from the defendant's waistline. After the defendant was cuffed? That's correct, Your Honor. However, there was no causal connection between the handcuffs and the this 2 to 3 inch bulge, which was in plain sight, which any officer, as Officer Solano did see, would have seen this 2 to 3 inch bulge protruding from the defendant's waistline, only covered by a t-shirt. As soon as the defendant faced Officer Solano, he immediately saw this 2 to 3 inch bulge. He testified, I saw that bulge. I believed it to be a weapon. I fear for my safety. Solano was going to frisk him, according to his own testimony. Is that correct? No, Your Honor. That was not his testimony. Oh. Okay. He testified, I saw that bulge. I believed it to be a weapon. I fear for my safety. And there are numerous cases, Pittman, Morales, Blakes, that all tell us that when an officer observes a bulge, that provides independent, reasonable suspicion that that person is armed and dangerous. When Officer Solano saw the bulge and independently decided to perform a pat-down of the defendant, he immediately directed his attention to that bulge and he felt a hard object. Actually, your argument Your argument begs the question of People v. Johnson, where there the court said, okay, if there is this articulable suspicion a bulge, actually I think grammar school kids are wearing cell phones. Where there is an articulable suspicion, we will permit the officer to frisk to secure his safety, his or her safety. But the handcuffing, according to Johnson, is a step too far. Here, the chronological order, as I recall, and correct me if I'm wrong, the occupants of the car, who are doing absolutely nothing according to the officer's testimony, and again, correct me if I'm wrong, are ordered out of the car and immediately handcuffed. And within 90 seconds to four minutes, this defendant is frisked and the weapon is recovered. Is that what happened? Yes, your honor. However, we left out the important fact that prior to having to ask the occupants of the car out of the car, the officers were aware that there were shootings going on every day, there were guns recovered on this exact day. When was the last day? Within a week's time, your honor. Officer McGrew testified that it was within a week's time. Yes, your honor. Officer McGrew testified within a week to a month and Officer Solano testified that these shootings were going on every day. A week to a month is a considerable time span, in my opinion. Well, Officer Solano testified within a week or a month. Officer McGrew said a week to a month and Officer Solano said these shootings were going on every day. But there was testimony that guns were recovered off of this exact cross street where the car was stopped. So a person who has the misfortune of passing through a high crime area becomes the lawful subject of handcuffing because he or she happened to commit a traffic violation in a high crime area? No, your honor. We're talking about the particular facts of this case. We're not talking about a general high crime area. Those are the facts of this case. Your honor, the traffic violation, the occupant of the car is ordered out of the car and frisked and handcuffed. So, same situation. The high crime area and the occupant of this car is lawfully ordered out of the car and handcuffed? No, your honor. The facts of this case, the final fact found that there was a gang war going on and we're talking about a very narrow area and a very narrow time frame. We're not talking about a general high crime area. A week to a month? Yes, where shootings are going on every day, your honor. Handcuffing does not necessarily transform a Terry stop into an arrest. Officers may use handcuffs for officer safety. All of the cases the defendant cites, they all state that officers may use handcuffs for officer safety. Here we have particular facts. But it indicated in this case, the officer indicated in this case that he wasn't fearful at the point. Did he not say that, that he wasn't fearful for his life until when he handcuffed the guy, that that wasn't there? Yes, your honor. He said that he was not threatened. And although the officer's subjective belief can be taken into consideration, it is not dispositive. It's what is objectively reasonable. And considering the particular facts of this case, it was objectively reasonable for the officer to use handcuffs when the defendant was axed out of the car. A Terry stop and an arrest may look similar because they are both seizures. However, courts look to the duration of that seizure and the scope of the investigation to determine whether a Terry stop has been transformed into an arrest. And here we're talking about a matter of seconds or less from the time that Officer McGrew placed handcuffs on the defendant to the time that Officer Stillano noticed this 2 to 3 inch bulge protruding from the defendant's waistline. I thought it was seconds up to 4 minutes before this bulge was detected. Well, your honor, the time of the stop, the total time of the stop was 90 minutes to 4 minutes. 90 seconds to 4 minutes. Yes, your honor. I apologize for that mistake. However, from the time that Officer McGrew placed the handcuffs on the defendant to the time that the defendant turned and faced Officer Stillano, Officer Stillano immediately noticed this 2 to 3 inch bulge protruding from the defendant's waistline, which was only covered by a T-shirt. And that provided independent reasonable suspicion in addition to this other reasonable suspicion to perform this pat-down. It was actually the pat-down that led to the recovery of this gun. This bulge was in plain sight and would have been observed regardless of the handcuffing. There is no causal connection between the handcuffing and the recovery of this gun. Before the defendant was ever frisked, this 2 to 3 inch bulge was observed. As the trial court properly found, regardless of one's opinion with regards to the handcuffs, the trial court who likened this area to Afghanistan? Yes, your honor. However, the doctrine of inevitable discovery, which is an exception to the exclusionary rule, tells us that even when evidence may otherwise be excluded, when that evidence would have been recovered by other lawful means, that that evidence is admissible. Here, the handcuffing did not transform the Terry stop into an arrest. But regardless of the handcuffing, that is not what led to the recovery of this gun. This bulge was in plain sight. It would have been observed by any of the officers as it was provided independent reasonable suspicion to perform this pat down. And when Officer Solano felt that this bulge was hard, Pittman tells us that that provides probable cause to seize the object. It is the recovery of this loaded handgun which led to probable cause to arrest the defendant. If there are no further questions for the reasons stated here today and in our brief, we respectfully request that this court affirm the defendant's conviction and acquit him of the crime. Thank you. Thank you very much, Counsel. Thank you, Your Honors. First, I just want to clarify the record a little bit. There were in fact six officers on the scene. If you read McGrew's testimony, he names all six officers. Solano, McGrew, Cooke, Petten, Crosta, Rusan, and Jesse. So there were in fact six officers on the scene at the time. The quickness of the stop here, Counsel said that this happened in seconds to minutes, only highlights the unreasonableness of what happened here. And if the officers didn't wait or didn't look for signs of suspicion or reasons that they should be concerned about their safety, they wouldn't have been doing the pat down. With respect to the narrow area and time frame that Counsel described in describing this as a high crime area, unfortunately Chicago has a lot of shootings. And so to allow the fact of recent shootings to give you reasonable suspicion or reasons to handcuff would jeopardize everyone who goes through certain parts of the city and happens to get stopped for blowing a stop sign or doing any number of traffic infractions. It does virtually nothing to give an objective objective factors to what the officers are permitted to do. And then finally with respect to the bulge, it's difficult to believe that this bulge was really a factor in what happened here in causing the pat down where the officer himself described the bulge in the most innocuous terms. He described it as a slight bulge and nothing major. It was only two or three inches. It was not characteristic of a gun. There was no evidence that it was shaped like a gun. It had outline of a gun. If the officer sees any bulge, wouldn't it be reasonable to check it out even for a cell phone? No. It would not, not any bulge, no. I mean there's certain cell phones, belt buckles, clothing, items in your pocket. I'm not saying what he finds. I'm saying he's just checking it out to see what it is. No. It's just a cell phone. Thank you. Terry doesn't give officers the right to check it out during a Terry stop. They have to have reasonable. If he sees a bulge, he wants to protect his own life and he can't check it out? No. Unfortunately, I mean Terry says that you have to have, you know, in order to do that pat down, that extra intrusion during a Terry stop, you have to believe that he's both armed and dangerous. You've got a Terry stop. Okay? That's what I'm saying. You've got a Terry stop. He's looking at the guy and he sees a bulge. He has no right to even look to see what that is? Unless it's characteristic of a weapon or he has some reason to think that the defendant might be armed. What's characteristic of a weapon? I've been a law enforcement. What is characteristic? The size or the shape of a weapon, the outline. Correct. Right. But that size doesn't eliminate. Right. If he has objective or reasonable facts to support his belief that the bulge is a weapon. And so if he knows that this defendant might be armed because he's investigating a shooting, if he's you know, thinks that it has the outline of a weapon, those are the kinds of objective factors that give him a reason. A reason to do what? I'm sorry? A reason to do what? To do a pat down. Okay. If he has those objective reasonable factors. And then the officer certainly can do the pat down to protect his safety. But the case law has been very clear that you need more than that. Would they give him, the officer, a reason to handcuff the occupant of a car involved in a traffic infraction? Probably, maybe, probably not. It's certainly one factor that the courts can look at to determine whether the handcuffing was reasonable. If you have reason to think that he's violent or going to use force against the officer, that sort of thing. That's one factor that can be considered. And if this Court has no other questions, we'd ask that you reverse his conviction or reverse and remand for a new trial. Okay. Let me commend both sides for excellent briefs and for excellent oral argument. You've certainly given me a lot to think about. I'm going to go back to my office and think about this matter. So I do want to commend both of you. Any questions from the panel? Okay. This Court is being recessed.